901 F.2d 1130
 284 U.S.App.D.C. 78
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
PEGASUS BROADCASTING OF SAN JUAN, INC., Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee,
Channel 7, Inc., Intervenor.
 No. 89-1472.
 United States Court of Appeals, District of Columbia Circuit.
 May 3, 1990.
 
 Before SILBERMAN, STEPHEN F. WILLIAMS and SENTELLE, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This cause was considered on the record on appeal from the Federal Communications Commission, and was briefed by counsel. While the issues presented occasion no need for an opinion, they have been accorded full consideration by the Court. See D.C.Cir.R. 14(c) (August 1, 1987). On consideration thereof, it is
 
 
 2
 ORDERED and ADJUDGED, by this Court, that the order of the Federal Communications Commission is hereby affirmed for the reasons set forth in the accompanying memorandum. It is
 
 
 3
 FURTHER ORDERED, by this Court, sua sponte, that the Clerk shall withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.R. 15(b)(2) (August 1, 1987). This instruction to the Clerk is without prejudice to the right of any party at any time to move for expedited issuance of the mandate for good cause shown.
 
 MEMORANDUM
 
 4
 Channel 7, Inc. ("Channel 7") broadcasts its television signals from a station on the main island of Puerto Rico. The island's terrain is rugged, with a central mountain range dividing the land into northern and southern halves. Because television signals travel in relatively straight lines, service from individual transmitters is limited. The FCC authorized Ponce Television Corporation, a licensee of Channel 7 on the southern coast, to employ experimentally three directionalized, finely tuned transmitters, in conjunction with terrain shielding, so as to improve coverage to the areas of the island that were not receiving its signal. During this period, Channel 7 found that service to a portion of the island had deteriorated. Approximately eight months before the expiration of its experimental authorization, Channel 7 sought permission to build a fourth transmitter near that region and to increase the power of one of its initial transmitters. The Commission did not act on the request for modification until four months after Channel 7's experimental authorization had expired. Over the opposition of appellant Pegasus Broadcasting of San Juan, Inc. ("Pegasus") to the request and Pegasus's petition to terminate Channel 7's experimental authorization, the FCC authorized the proposed modification and on its own motion extended Channel 7's experimental authorization for six months. See Memorandum Opinion and Order, 4 F.C.C.Rcd 5258 (June 30, 1989).
 
 
 5
 Pegasus contends that the FCC acted arbitrarily and capriciously in granting Channel 7's application to modify its facilities. According to Pegasus, when the Commission considered the application, Channel 7's experiment had led to service losses for some of Channel 7's customers, and the modifications sought would create new losses without producing new experimental data. Thus, the modification and continuation of Channel 7's experimental authorization would be contrary to the public interest.
 
 
 6
 In its order granting Channel 7's modification request, the FCC considered and rejected each of Pegasus's concerns. The Commission originally granted the experimental authorization to gather information on overcoming terrain obstruction of television signals. See Memorandum Opinion and Order, F.C.C. 86-451, at 1 (Dec. 18, 1986). In the FCC's view, Channel 7's proposed modifications would produce valuable information to that end by adjusting its technology to improve the overall availability of its signal. While the Commission recognized that the experiment had produced some service losses, it disputed Pegasus's estimate of those losses, noting that the modifications sought by Channel 7 would likely reduce those losses, and stressed that the experiment had also led to significant service gains. Because we believe that the FCC reasonably concluded that valuable data could be gathered from Channel 7's proposed modifications and that the continued service losses that would result from the continuation of the experiment would not outweigh the value of the project, we think the Commission acted reasonably when it authorized the proposed modification and declined to terminate the experiment.
 
 
 7
 Pegasus next argues that the FCC improperly subsumed its consideration of Pegasus's petition to terminate the experimental authorization into its decision on Pegasus's petition to dismiss the modification application and that this led the Commission to ignore Pegasus's arguments for termination of the experiment. In its order, however, the FCC expressly acknowledged and described Pegasus's petition to terminate, see 4 F.C.C.Rcd at 5259, and we have stated that the Commission adequately considered and evaluated Pegasus's arguments in arriving at its termination decision. We therefore do not agree with Pegasus that the FCC's consolidation of the petitions led the Commission to inadequately consider Pegasus's arguments.
 
 
 8
 Finally, Pegasus argues that the FCC acted arbitrarily and capriciously in extending Channel 7's experimental authorization without requiring that Channel 7 file an application for the extension. Under section 308(a) of the Communications Act, 47 U.S.C. Sec. 308(a), the FCC "may grant construction permits and station licenses, or modifications or renewals thereof, only upon written application therefor received by it...." Id. In addition, according to an FCC rule, an application for renewal of an experimental broadcast station license must contain a report on the experiment setting forth certain enumerated details. See 47 C.F.R. Sec. 74.113(a).
 
 
 9
 With regard to the statute, we are persuaded by the Commission's argument that it was empowered to grant the extension on its own motion in light of the length of time the FCC took to rule on the application for modification. Given that delay, it was quite legitimate for the FCC to treat the modification application as a request for extension of experimental authorization in order for the Commission to be able to give effect to Channel 7's modification request. See 47 U.S.C. Sec. 154(i) ("The Commission may perform any and all acts, make such rules and regulations, and issue such orders, not inconsistent with this chapter, as may be necessary in the execution of its functions."). And the FCC's own rule does not dictate that renewal of experimental authorization be granted only upon application. Moreover, it does not speak to the granting of extensions, which the Commission may treat differently from renewal authorization. It was therefore reasonable under that rule for the FCC, on its own initiative, to extend Channel 7's experimental authorization.